IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROSS PARKHURST and AMY PARKHURST, individually and as next friend of H.P., a minor child under the age of eighteen — PLAINTIFFS

v. — Civ. No. 07-2068

STEPHEN TABOR, individually and in his official capacity as Prosecuting Attorney for Twelfth Judicial District, Sebastian County, State of Arkansas; DANIEL SHUE, individually and in his official capacity as Chief Deputy Prosecuting Attorney for Twelfth Judicial District, Sebastian County, State of Arkansas; COUNTY OF SEBASTIAN, a body corporate and politic in the State of Arkansas; CHAD BELT, an individual — DEFENDANTS

**MEMORANDUM OPINION & ORDER**

This case requires the Court to determine whether a crime victim can invoke federal jurisdiction to challenge as violative of her right to equal protection a state decision not to prosecute the party she accuses for reasons of class-based discriminatory prejudice against that victim. Plaintiffs in the present case, the biological mother and adoptive father of H.P., a minor child, allege prosecutors for the State of Arkansas acted with invidious prejudice against H.P. and similarly situated crime victims in declining in the face of overwhelming evidence of guilt to prosecute Chad Belt, biological father of H.P., for sexual abuse. Before the Court are motions to dismiss (Docs. 7, 17) filed pursuant to Fed. R.

Civ. Pro. 12(b)(6) by separate Defendants, Sebastian County, Arkansas and named prosecutors, and responsive pleadings, which raise *inter alia* the issue of whether the decision not to prosecute Belt injured H.P. in such a personalized and direct manner that Plaintiffs have standing to bring suit under 42 U.S.C. § 1983 to test that decision against the equal protection mandate of the Fourteenth Amendment. Whereas the Court finds no constitutional right of crime victims to the nondiscriminatory prosecution of crime, and for reasons reflected herein, the Court determines Plaintiffs are without standing, and Defendants' motions are GRANTED.

## I. Background

In ruling on motions under Rule 12(b)(6), the Court must accept as true the well-pleaded allegations of plaintiffs and make all reasonable inferences in favor of plaintiffs. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996). Thus, the Court recites the facts, in the light most favorable to Plaintiffs, as follows:

H.P. was born on May 8, 2000 out of the marriage of Plaintiff Amy Parkhurst and Defendant Chad Belt, who resided at that time in the State of Arkansas. Following the divorce of Parkhurst and Belt on August 23, 2000, Parkhurst maintained custody of H.P. and Belt was permitted visitation privileges during the summer months. On December 23, 2001, Parkhurst



AO72A
(Rev. 8/82)

married Plaintiff Ross Parkhurst, and the new family eventually relocated from Arkansas to Vancouver, Washington.

Following H.P.'s first visit with Belt in the summer of 2001, H.P. pleaded with Parkhurst not to require her to return to Belt's home. When Belt arrived the following summer to retrieve H.P. for her visit, H.P. suffered a nervous breakdown and was not required to go with Belt. However, Belt insisted that H.P. resume visitation in 2003. During that visit, Parkhurst detected increasing agitation and emotionality in H.P. during phone conversations. H.P. attributed her distress to the fact that Belt had, in a violent rage, beaten H.P.'s pet dog to death. Parkhurst's concerns grew when, on July 21, 2003, H.P. informed Parkhurst that H.P. had suffered injury to her genital area in a diving board accident. (Doc. 1 ¶¶ 25, 26.)

Out of concern for the true nature of H.P.'s injuries and Belt's failure to procure medical treatment for H.P., Parkhurst traveled to Arkansas. Parkhurst found H.P. to have extensive injuries but reluctant to discuss the cause. Parkhurst removed H.P. from Belt's home and immediately sought medical treatment for her in Arkansas. Medical personnel diagnosed H.P. as a victim of sexual abuse and referred the matter to the Crimes Against Children Division ("CACD") of the Arkansas State Police. CACD determined that H.P. had been

sexually abused but that H.P. maintained that she had been injured on a diving board for fear of identifying the perpetrator. The Children Safety Center in Springdale, Arkansas diagnosed H.P. as a victim of sexual trauma and identified Belt as the alleged perpetrator despite H.P.'s refusal to accuse Belt.

After returning to Washington, Parkhurst was contacted by Belt and his attorney, who on their own initiative offered to terminate Belt's parental rights and allow Ross Parkhurst to adopt H.P. in exchange for a letter stating that H.P. had never accused Belt of sexual abuse. (Doc. 1 ¶¶ 34, 35.) Parkhurst agreed.

Upon learning that she would not have to return to Arkansas, H.P. informed Parkhurst that Belt had sexually abused and raped her in the summers of 2001 and 2003. (Doc. 1 ¶¶ 39, 40.) A psychiatrist confirmed the credibility of H.P.'s allegations, and the Arkansas Crime Victims Reparations Board awarded H.P. a sum for medical expenses. Belt was arrested by Sebastian County police and charged with felony sexual assault.

Prosecuting attorney Tabor and Chief Deputy Prosecuting Attorney Daniel Shue were assigned to Belt's case. The prosecutors expressed confidence in the overwhelming evidence against Belt. (Doc. ¶ 45.) However, according to Plaintiffs'

complaint, Defendant Shue expressed to third parties, and Defendant Tabor confirmed, awareness of a policy or custom of his office against prosecuting sexual abuse cases that involve incest and a preference for finding reasons not to proceed with them. (Doc. 1 ¶ 46.) After further investigation, the prosecutors filed a *nolle prosequi* and dropped the charges against Belt.[1]

On June 6, 2007, Plaintiffs filed a complaint on H.P.'s behalf[2] against Defendant Belt under state tort law alleging battery and against Defendant prosecutors and Sebastian County, Arkansas under § 1983 alleging violations of H.P.'s right to equal protection. Plaintiffs seek damages and an injunction requiring the reinstatement of the charges against Belt. Plaintiffs contend H.P. was discriminated against as a member of a class they define as victims of incestuous sexual abuse. Pursuant to Defendants' motions to dismiss, the Court must determine whether H.P. suffered a personal injury resulting from the decision not to prosecute Belt such that Plaintiffs have standing to bring suit under § 1983.

---

1 Defendants allege their decision was based on the fact that Belt successfully passed a polygraph examination after the prosecutors stipulated to its admissibility.

2 Fed. R. Civ. Pro. 17(c) permits guardians to sue on behalf of infant children as their representatives.

**II. Standard of Review**

When a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the set of facts, consistent with its allegations, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326-327 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In order to streamline litigation and dispense with needless discovery and factfinding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable. *Neitzke*, 490 U.S. at 326-27 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable . . . . [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (May 21, 2007). Further, those factual allegations must be contained in the four corners of the complaint to be cognizable to a court ruling on a motion to dismiss. *Florida State Bd. of Admin. v. Green Tree Financial Corp.*, 270 F.3d 645, 663 (8th Cir. 2001).

However, a court may not dismiss claims for mere

disbelief of a plaintiff's allegations, *Neitzke*, 490 U.S. at 327. Courts must accept as true a plaintiff's well-pleaded allegations, draw all reasonable inferences in favor of the plaintiff and construe complaints liberally. *Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988); *Hafley*, 90 F.3d at 266; *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). Courts should bear in mind that "[t]he issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims." *Aceto Agr. Chemicals Corp.*, 872 F.2d at 1376.

In the case at bar, the Court finds presentation of evidence to be unnecessary. Accepting as true the allegations of Plaintiffs and making all reasonable inferences in favor of Plaintiffs, the Court finds no provable set of facts on which Plaintiffs might establish standing to maintain an action under § 1983. H.P. cannot be said to be personally injured by the decision not to prosecute Belt because the Constitution does not guarantee to H.P. the nondiscriminatory prosecution of crimes against her.

**III. Discussion**

Defendants challenge Plaintiffs' standing to invoke the jurisdiction of this Court under Article III of the United States Constitution, which restricts the jurisdiction of federal courts to actual cases and controversies. *Allen v.*



AO72A
(Rev. 8/82)

*Wright*, 468 U.S. 737, 750 (1984). The case or controversy requirement effectuates the principle of separation of powers on which the Federal Government is founded, *id.*, and is thus "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). In response to "concern about the proper-and properly limited-role of the courts in a democratic society," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), the case or controversy requirement has been crystalized by several doctrines, the most important of which, raised here by Defendants, is the doctrine of standing. *See Allen*, 468 U.S. at 750. The Court must determine whether crime victims have standing to invoke the Article III adjudicatory power to subject state prosecutorial decisions to constitutional scrutiny or whether such decisions are "discretionary public duties that are enforced by public opinion, policy, and the ballot." *Doe v. Mayor and City Council of Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990). In other words, when prosecutors decline to charge perpetrators of crimes against a particular class of citizens for prejudicial disfavor of that class, can those victim-citizens make constitutional challenges or must they resort to the political process to hold prosecutors

accountable? May they respond to prosecutorial selectivity personally as litigants or must they respond collectively as voters?

In order to have standing to invoke the judicial process, a plaintiff must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). "Standing it is admitted does not always lend itself to consistently logical analysis. But injury in fact stands on this subject like a deeply driven channel marker for all to see while the swirl and eddy of inconsistent currents round-about it." *U.S. v. Grundhoefer*, 916 F.2d 788, 791-92 (2nd Cir. 1990). The personal injury requirement has the effect of preventing litigants from raising the rights of other individuals, barring adjudication of generalized grievances more appropriately addressed by the political process and the mechanics of representative government and requiring plaintiffs to be possessed of an interest protected by the law invoked. *See Allen*, 468 U.S. at 751. Plaintiffs must assert an interest more particularized and personal than the general interest of the public in the evenhanded administration of justice. Plaintiffs must "allege such a personal stake in the outcome of the controversy as to



AO72A
(Rev. 8/82)

assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions," *Baker v. Carr*, 369 U.S. 186, 204 (1962), and an injury in fact that is concrete, particularized, actual or imminent, fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). The harm alleged by Plaintiffs cannot be conjectural or hypothetical, *Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983), nor can it be merely abstract, *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974); rather, it must be "distinct and palpable." *Warth*, 422 U.S. at 501. If Plaintiffs cannot make a showing sufficient to satisfy those minima, the Court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-156 (1990). Accordingly, the Court must determine whether H.P. has a personal interest, in the form of a constitutional right to the nondiscriminatory prosecution of crime, such that she suffers direct and personal injury from the decision not to prosecute Belt.

While there are broad and expansive categories of personal interests that confer standing on a party, the requirement remains firm that a potential plaintiff must



AO72A
(Rev. 8/82)

herself have suffered injury. *Linda R.S. v. Richard D.*, 410 U.S. 614, 616-17 (1973); *see also Sierra Club v. Morton*, 405 U.S. 727, 738 (1972). "[W]e have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing, federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." *Linda R.S.*, 410 U.S. at 617 (citing *e.g. Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-167 (1972); *Flast v. Cohen*, 392 U.S. 83, 101 (1968); *Baker*, 369 U.S. at 204) (footnotes omitted). Plaintiffs have standing to maintain suit if the discriminatory treatment they allege implicates the protections of the Fourteenth Amendment such that they are constitutionally and judicially cognizable. Prosecutorial conduct may only be subjected to constitutional scrutiny by crime victims if those victims have a constitutional right to the nondiscriminatory prosecution of crime.

The Court can find no decision recognizing such a right and has found courts and scholars to be unanimous in their disavowal of its existence. Urged by a litigant to recognize "an enforceable right . . . as a victim to have [] defendants criminally prosecuted" and "that such a right was protected by the equal protection clause," the Fourth Circuit stated axiomatically that "[t]here is, of course, no such right."

*Sattler v. Johnson,* 857 F.2d 224, 227 (4th Cir. 1988); *see also Sellner v. Panagoulis,* 565 F. Supp. 238, 250 (D. Md. 1982) (stating "[t]his court does not know of any right afforded by either the Constitution or laws of the United States to private persons to compel a state to prosecute criminal activity."), *cert. denied,* 479 U.S. 1069 (1987); *Doe*, 745 F. Supp. at 1139 (stating "[t]he Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime."); *Linda R.S.*, 410 U.S. at 619 (finding mother to be without standing to seek injunction requiring district attorney to prosecute father for failure to make child support payments because "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Crime victims lack standing to challenge prosecutorial decisions due to the "special status of criminal prosecutions in our system," which prevents the establishment of a "direct nexus between the vindication of [victims'] interest[s] and enforcement of the State's criminal laws" such that victims would be considered to have a personal stake in state punishment of crime. *Linda R.S.*, 410 U.S. at 619. That conclusion is drawn necessarily from the fundamental purposes of the criminal justice system. Criminal law operates on the



AO72A
(Rev. 8/82)

public level through penalty and determent to protect the interests of the public at large, and it will not reach into the province of civil law to offer compensation to and contemplate the personal interests of individuals who suffer particularized injury. *See LaFave and Scott*, Criminal Law Handbook, 11, West Publishing (1977). "Collateral individuals to [a criminal] proceeding . . . have not suffered an Article III direct injury sufficient to invoke a federal court's jurisdiction to rule on their claim," *Grundhoefer*, 916 F.2d at 791, because crime is not prosecuted for the benefit of the victimized; crime is prosecuted on behalf of the state in the collective interest of the public. Thus, it is generally recognized that:

> The direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced. It is the defendant and he alone that suffers the direct consequences of a criminal conviction and sentence. . . . For this reason a private citizen generally lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.

*Id.* at 791-92 (denying standing to bankruptcy trustee to appeal restitution order imposed on debtor's principals) (quotations omitted); *see also Younger v. Harris*, 401 U.S. 37, 41 (1971) (finding certain plaintiffs to lack standing to challenge a criminal statute where "[n]one ha[d] been indicted, arrested, or even threatened by the prosecutor.");



AO72A
(Rev. 8/82)

*U.S. v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (finding crime victims to be without standing to challenge through appeal the criminal restitution orders of federal district courts); *Whitmore*, 495 U.S. at 157 (denying inmate standing to bring challenge to another inmate's death sentence under the Eighth Amendment). Regardless of whether a constitutional challenge is brought by a crime victim or another party collateral to a criminal prosecution, the rule abides that "the interest in the just administration of the laws, including the interest in nondiscriminatory criminal enforcement, is presumptively deemed nonjusticiable even if invoked by persons with something beyond a generalized bystander's concern." L. Tribe, *American Constitutional Law* § 3-16, at 124 (2d ed. 1988).

The Court is well advised of those decisions that warn:

> Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.

*U.S. v. Handler*, 383 F. Supp. 1267, 1270-71 (D. Md. 1974). However, the case or controversy requirement of Article III extends to criminal defendants and those threatened with prosecution unique judicial standing to make selective



AO72A
(Rev. 8/82)

enforcement challenges under the Equal Protection Clause. *See e.g. Stemler v. City of Florence*, 126 F.3d 856, 872-73 (6th Cir. 1997). While it is said that the standing requirement "does not insulate executive action from judicial review . . . [or] prevent any public interests from being protected through the judicial process," *Sierra Club*, 405 U.S. at 740, the current state of the law does not permit crime victims to vindicate whatever interests they may have in the prosecution of crime through the judicial process. Undoubtably, victims of crime would be gratified to see perpetrators punished, however, that interest is not protected by the Equal Protection Clause. The Court recognizes the paradigm that, while only the prosecuted have standing to challenge a prosecutorial regime that favors victimizers of certain disfavored victims, claims such as Plaintiffs' arise only in the absence of prosecution. The true parties in interest stand to benefit from the discriminatory conduct and thus will be disinclined to make constitutional challenges. However, whereas Plaintiffs are unable to show that H.P. sustained some direct and actual injury, more particularized than one to her general interest in seeing equality and fairness in enforcement of the laws, the Court must find Plaintiffs have failed to raise a justiciable case or controversy. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *see also Ex*

*parte Levitt*, 302 U.S. 633, 634 (1937). Any ruling to the contrary would violate the fundamental principles of federalism and separation of powers that define and limit the power of this Court.

**IV. Conclusion**

Based on the foregoing, Defendants' motions to dismiss are GRANTED as to Plaintiff's constitutional claims and those claims are DISMISSED WITH PREJUDICE. Whereas the Court disposes of Plaintiffs' claims on the basis of lack of standing, it intimates no view as to the merits of those claims. Whereas the Court has determined that it does not have jurisdiction over Plaintiffs' federal claims, it cannot exercise pendant jurisdiction over Plaintiffs' state claims, and those claims are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 30th day of October 2007.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge



AO72A
(Rev. 8/82)